United States District Court
Southern District of Texas
**ENTERED**
September 23, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHELSIE CIERRA RUBIN, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-01148 |
| | § | |
| | § | |
| JUAN PEDRO DE LA CRUZ, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Opposed Motion to Dismiss for Failure to State a Claim filed by Defendant City of Baytown Texas ("City"). (Dkt. 33). Having carefully reviewed the motion, response, reply and applicable law, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### FACTUAL BACKGROUND

For purposes of the Court's consideration of the pending motion, the following facts alleged in the complaint[1] are taken as true. (Dkt. 48). This civil rights lawsuit arises from an arrest that ended in the shooting death of Pamela Turner ("Turner"). At the time of her death, Turner had recently been served with an eviction notice and

---

[1] Following the filing of the motion to dismiss, Plaintiffs filed two amended complaints. The same arguments presented by the pending motion apply to the claims set forth in all of the amended complaints.

1

suffered from mental illness. The City and its police officer Defendant Juan Pedro De La Cruz ("De La Cruz") were "familiar with her" from "prior dealings.". (Dkt. 48 at 18). While on patrol, City police officer Juan Pedro De La Cruz ("De La Cruz") went looking for Turner pursuant to an arrest warrant. He kept watch on The Brixton Apartments near Turner's apartment building and was present when Turner came home. De La Cruz announced over the police radio that he "was out with Turner" and he attempted to arrest her. (Dkt. 48 at 15). During the arrest, De La Cruz shot and killed Turner. Plaintiffs, Turner's children and representatives of her estate, have brought this action against De La Cruz and the City of Baytown, seeking to recover damages for her death.[2]

The third amended complaint asserts state and federal law claims against De La Cruz and the City. It contains claims brought under 18 U.S.C. § 1983 ("Section 1983") for violation of Turner's constitutional rights against the use of excessive force and under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq* ("Section 504"). (Dkt. 48 at 33-40).[3] In support of their Section 1983 claims against De La Cruz, Plaintiffs allege that he used "significant and then deadly force…against Turner who did not present as a credible threat of causing serious injury or death" in violation of her Fourth and Fourteenth Amendment rights. (Dkt. 48 at 4). Plaintiffs allege that the City of Baytown is liable for

---

[2] Other previously named defendants including Cypress Point Equity Partners LLC, CP 1601 Baytown, LLC, Cypress Point EP I, LLC, Cypress Point Management, LLC were voluntarily dismissed from this lawsuit.

[3] Plaintiffs also asserted a claim for violation of the Fair Housing Act of 1968, but the sole defendant regarding this claim has been dismissed.

2

Turner's death under Section 1983 because it "knowingly chose to ignore the obvious risk" to Turner from De La Cruz's conduct and failed to implement policies "and/or training" that resulted in Turner's death. (Dkt. 35 at 8).

In the pending motion, the City argues that it is entitled to the dismissal of Plaintiffs 'Section 1983 constitutional claims because Plaintiffs have failed to allege facts sufficient to establish municipal liability under 42 U.S.C. §1983. It also argues that it is entitled to dismissal of the ADA and Section 504 claims because the statutes do not apply to an officer's conduct in making an arrest as alleged in this case. The Court considers these arguments in turn below.

## LEGAL STANDARD

### Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id*.

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff

3

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). In conducting this analysis, the Court does not consider legal conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.       Municipal Liability Under 42 U.S.C. § 1983

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A local government may not be sued under Section 1983 for the deprivation of rights guaranteed by the Constitution or federal law inflicted solely

4

by its employees or agents. *See Monell*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."). However, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," the government agency is liable under Section 1983. *Id*.

To state a claim under Section 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

> An official policy is either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents the municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.

*McIntosh v. Smith*, 690 F. Supp. 2d 515, 530 (S.D. Tex. Feb. 2, 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

When a policy does not facially violate a federal right, to establish municipal liability a plaintiff "must show that the policy was adopted or maintained with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th

5

Cir. 2004). In other words, a plaintiff must show the municipal policy reflects "the requisite degree of culpability"—that is, "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Valle*, 613 F.3d at 542 (quoting *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 411 (1997)). Similarly, a local government's decision not to implement policies or adequately train its employees can only be considered an official government policy where the failure amounts to "deliberate indifference" to the rights of persons with whom the employee comes into contact. *Connick v. Thompson*, 563 U.S. 51 (2011).

'"[D]eliberate indifference 'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "[A] showing of simple or even heightened negligence will not suffice." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Plaintiff must allege "[a] pattern of similar constitutional violations . . . to demonstrate deliberate indifference," since without notice of the effects of failing to promulgate a policy, policymakers cannot be said to have deliberately chosen a policy scheme that will cause violations of constitutional rights. *Porter*, 659 F.3d at 447 (discussing failure-to-train claims but noting that "logically," the same reasoning applies to "failure-to-promulgate-policy claims"). A mere showing of generalized risk is insufficient to establish deliberate indifference; rather, a plaintiff must show that a reasonable policy maker would conclude that the constitutional deprivation that occurred was a plainly obvious consequence of its decision. *Brown*, 520 U.S. at 411.

6

**1. Plaintiffs Have Not Established Claims under Section 1983 for Failure to Implement Adequate Policies and/or Training**

Plaintiffs allege that the City is liable under Section 1983 because it failed to implement policies and/or training that caused Turner's death. These policies and/or training are alleged as follows: how to interact with mentally ill persons; providing private security and/or law enforcement services at The Brixton Apartments or similar type housing units; how evictions from private housing complexes may lawfully be accomplished; the proper use of arrest warrants; the equal treatment of citizens in the service of arrest warrants; service of arrest warrants on persons who are known to suffer from mental illness; de-escalation of incidents; use of deadly force; how to respond to a person in possession of a taser; and when a taser in the hands of another constitutes a deadly threat.(Dkt. 48 at 20-22).

Plaintiffs allege that these failures constituted a deliberate indifference to Turner's injury because the City knew that its officers "routinely": (1) were required to make arrest and/or use of force decisions; (2) made incorrect arrest and/or use of force decisions that resulted in violations of citizens 'civil rights; (3) were required to evaluate facts to determine whether or not deadly force was necessary and lawful; (4) incorrectly identified persons as deadly threats, which resulted in violations of citizens 'civil rights; (5) were requested to assist with evictions from private housing in a manner that resulted in violations of citizens 'civil rights. (Dkt. 48 at 22). Plaintiffs allege that "[d]espite it being plainly obvious to the [the City], as a result of direct observation, citizen complaints, and/or

7

litigation, that additional or different policies and/or training would protect the rights of citizens, [it] did not provide the additional or different policies and/or training." (Dkt. 48 at 23) As factual support for these allegations of deliberate indifference, the complaint lists and describes twelve incidents involving the use of "excessive force" by City's police officers against the public, (Dkt. 48 at 24-28). These factual allegations are insufficient to establish a claim for municipal liability against the City of Baytown.

Plaintiffs have not alleged any facts showing that the listed incidents are similar to the incident at issue in this case, that the incidents were, in fact, found to be an excessive use of force or how each of these incidents made it "plainly obvious" to the City that the alleged failures to implement policies and/or training would result in Turner's death. *See Porter*, 659 F.3d at 447. Two of the incidents involved automobile accidents and three occurred *after* the incident at issue in this case. Of the remaining incidents, none are alleged to have involved a shooting or death, an arrest following a warrant, someone brandishing a taser or even someone suffering from mental illness. *Id.* The mere listing of these incidents without more cannot establish that the City acted indifferently with respect to the potential harm to Turner. Surviving a motion to dismiss requires more than hinting at "a sheer possibility that a defendant has acted unlawfully" and to do so requires "more than labels and conclusions." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Because Plaintiffs have failed to plead facts that "show similar incidents of excessive force," or the knowledge or approval by a policymaker of a pattern or practice of excessive force, Plaintiffs have failed to state a plausible claim of municipal liability against the City. *See*

8

*Llamas v. Harris County, Tex.,* No. 4:19-CV-1029, 2019 WL 7708605, at *5 (S.D. Tex. Nov. 22, 2019), report and recommendation adopted, No. CV H-19-1029, 2020 WL 410196 (S.D. Tex. Jan. 23, 2020); *see also Knight v. City of Balch Springs,* 3:11–CV– 1122–B, 2011 WL 3519938, at *4 n. 4 (N.D. Tex. Jul 25, 2011) (collecting cases from other jurisdictions). Accordingly the City is entitled to dismissal of these claims.

> **2. Plaintiffs Have Not Established Claims under Section 1983 for Promulgating Unconstitutional Policies Regarding Internal Affairs Complaints, Public Statements and "Indemnification and Litigation Strategy."**

Plaintiffs allege that the City violated Turner's rights by having an unconstitutional "[i]nternal affairs process [that] discourages complaints from being filed," a policy of making "false and/or misleading public statements that contain boilerplate promises of integrity and accountability" and a policy of "defending but not indemnify[ing] its officers in civil rights matters." (Dkt. 48 at 22). The complaint does not allege any facts establishing that any of these alleged policies are facially unconstitutional. Nor does the complaint allege facts establishing that these policies were promulgated with deliberate indifference to the known or obvious consequence of deadly force being used against Turner.

There are no facts alleged how the City should have known that placing the option to file a complaint in a "submenu" heading on its webpage would lead to Turner's death. (Dkt. 48 at 28-29). While Plaintiffs allege that the City made false and misleading public statements, they allege no facts establishing that anything it said was not true or how statements regarding the integrity of its police department violated Turner's constitutional

9

rights. (Dkt. 48 at 29-30). Nor do plaintiffs allege facts establishing how the City should know that its litigation strategy of defending its officers results in a lack of "oversight and accountability for officers and [the City]" and how this conduct was a moving force behind Turner's death.  (Dkt. 48 at 31). Conclusory allegations of constitutional violations are insufficient to survive a motion to dismiss. Thus the City is entitled to dismissal of these claims. *See Cox v. City of Dallas, Texas*, 430 F.3d, 734, 748 (5th Cir. 2005).

### 3.   Ratification of De La Cruz's Use of Excessive Force

Plaintiffs argue that the City is liable under Section 1983 because it ratified De La Cruz's conduct by not firing him for his alleged use of excessive force. (Dkt. 48 at 23) The Court disagrees. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). However, the Fifth Circuit has limited the theory of ratification to "extreme factual situations." *Compare Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (refusing to find ratification where officer shot fleeing suspect in the back), *with Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (finding ratification where in response to a minor traffic violation, three patrol cars engaged in a high-speed chase during which they fired wildly at the suspect; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved, killing the innocent rancher as he emerged from his own vehicle.). Under Fifth

10

Circuit precedent, this case does not present such an extreme factual situation. Accordingly, the City cannot be held liable for Turner's death under this theory.

## II.        ADA and Section 504 Claims

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). With regard to public entities, Congress intended that Title II "work in the same manner as Section 504," and jurisprudence interpreting either statute is generally applicable to both. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citations omitted).

A disabled plaintiff can succeed in an action under the Title II and Section 504 if she can show that, by reason of her disability, she was either excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was otherwise "subjected to discrimination by any such entity." *Hainze*, 207 F.3d at 799 (quotations omitted). Neither party disputes that Turner is a disabled person or that the City is a public entity. Plaintiffs allege that De La Cruz knew "Turner required [a] reasonable accommodation to address her mental health disability." (Dkt. 35 at 10). Plaintiffs assert that the City should have accommodated her disability by having a mental health

11

professional and/or backup officer respond with De La Cruz or scheduling a time for Turner to surrender herself to the court. *Id*.

In *Hainze*, the Fifth Circuit held that the plaintiffs could not bring a Title II claim against law enforcement officials and a county under the ADA because "Hainze's assault of [the officer] with a deadly weapon denied him the benefits of that program." *Id.* at 801. This court further recognized an "exigent circumstances" exception to the application of Title II "to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." *Hainze*, 207 F.3d at 801. In other words, officers do not first have to consider whether their actions will comply with the ADA "in the presence of exigent circumstances and prior to securing the safety of themselves" and others or when they are reacting "to potentially life-threatening situations." *Id.*

Plaintiffs allege that there were no such exigent circumstances here. (Dkt. 48 at 15). Plaintiffs allege that "[w]hen DE LA CRUZ made contact with TURNER, he was not responding to a disorder, was not responding to an emergency, had not been dispatched to an incident….DE LA CRUZ had time to plan and prepare before interacting with TURNER." (Dkt. 48 at 15).

The City makes two arguments in support of dismissing Plaintiffs 'ADA and Section 504 claims under the "exigent circumstances" exception: (1) that Turner's alleged obtaining of De La Cruz's taser constituted an "exigent circumstance" that excused De La

12

Cruz from any disability-accommodation requirements (Dkt. 33 at 9-10); and (2) that De La Cruz's duty to effectuate an arrest warrant against Turner additionally constituted an "exigent circumstance." (Dkt. 38 at 5).

The Court is not persuaded by the City's arguments. There are no facts alleged regarding whether Turner had a weapon when De La Cruz initially approached her or that Turner assaulted De La Cruz before she was shot. Whereas the plaintiff in *Hainze* was holding a knife when officers approached the scene (*Hainze*, 207 F.3d at 797), Turner did not obtain De La Cruz's taser until after the situation had gotten out of hand—which, Plaintiffs credibly argue, might not have occurred if Turner initially received the accommodations to which she was entitled. (Dkt. 35 at 10)

Furthermore, Plaintiffs have not demonstrated that an arrest warrant itself constitutes an "exigent circumstance" that relieves an individual or municipality of their obligations under Section 504 and the ADA. The fact that Turner had a valid warrant for her arrest does not itself mean that her immediate arrest constituted potentially life-threatening situation or that Turner posed a threat to human life, and Plaintiffs have pled that no such threat existed. (Dkt. 48 at 15). *See Wilson v. City of Southlake*, 936 F.3d 326, 331 (5th Cir. 2019) (no "exigent circumstance" exception where "[t]here was no potentially life-threatening situation or threat to human life."); *Windham v. Harris Cty.*, 875 F.3d 229, 235 n.4 (5th Cir. 2017) (refusing to extend exception to non-exigent arrest); *Salinas v. City of New Braunfels*, 557 F. Supp. 2d 771, 776 (W.D. Tex. 2006) (refusing to

13

extend exception to officers who, while responding to a 911 call, failed to accommodate plaintiff after area was secure).

Accordingly, Plaintiffs have adequately plead facts, if true, establishing that the *Hainze* exception does not apply and they may proceed with their claims under the ADA and Section 504. The City's motion to dismiss this claim is denied.

## CONCLUSION

For the reasons stated above, the Opposed Motion to Dismiss for Failure to State a Claim filed by Defendant City of Baytown Texas (Dkt. 33) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' claims under Section 1983 are **DISMISSED**.

SIGNED at Houston, Texas, this 22nd day of September, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

14