# United States Court of Appeals
# for the Fifth Circuit

United States Courts
Southern District of Texas
FILED

*April 02, 2025*

Nathan Ochsner, Clerk of Court

No. 24-20015

United States Court of Appeals
Fifth Circuit

**FILED**

March 11, 2025

Lyle W. Cayce
Clerk

CHELSIE CIERRA RUBIN,
*Personally* and *as the Personal Representative of*
THE ESTATE OF PAMELA SHANTAY TURNER;
CAMERON DAISHAUN JANUARY,
*Personally* and *as the Personal Representative of*
THE ESTATE OF PAMELA SHANTAY TURNER,

*Plaintiffs—Appellants*,

*versus*

JUAN PEDRO DE LA CRUZ; CITY OF BAYTOWN, TEXAS,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1148

Before SMITH, STEWART, and DUNCAN, *Circuit Judges.*
JERRY E. SMITH, *Circuit Judge:*[*]

Baytown Police Officer Juan De La Cruz attempted to arrest Pamela
Turner on three warrants when Turner took De La Cruz's taser during a

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-20015

ground struggle and tased him in the testicles. In shock and fearing for his life, De La Cruz jolted back, unholstered his firearm, and fired at Turner, who died at the scene. Turner's daughter and son, Chelsie Rubin and Cameron January, sued De La Cruz under 42 U.S.C. § 1983, alleging violations of Turner's Fourth Amendment rights. They also sued the City of Baytown, alleging violations of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") and myriad state laws. The district court dismissed all claims on summary judgment. We affirm.

I.

De La Cruz resided at the Brixton Apartments and served as a courtesy law enforcement officer for the apartments. Turner also resided there and was known to have some "mental health issues" that caused her to be "aggressive," but no one involved in this case knew of any specific conditions or her medical history.

While De La Cruz was leaving the apartment complex to respond to an unrelated dispatch call, he saw Turner screaming in the middle of the apartment parking lot. Seeing that she was causing a disturbance in the neighborhood, he searched her name in the police database and discovered that she had three active Class B misdemeanor warrants. De La Cruz did not execute the warrants at that time but instead left the complex to respond to the dispatch call.

The dispatch call took about ten minutes and upon his return, De La Cruz spotted Turner walking alongside the border of the property. He drove toward her, got out of his car, and tried to arrest her on the warrants, but she

2

No. 24-20015

ignored him and walked away.[1]

To stop her, De La Cruz grabbed Turner's arm, but she wrestled out of his grip and again tried to walk away. De La Cruz, in response, drew his X26P taser in probe-deployment mode and fired it at Turner.[2] Turner fell backward onto the sidewalk, having been tased, but did not appear to be fully incapacitated.

De La Cruz then walked over to her and bent down to handcuff her. Turner, however, fought back, leading to a ground struggle that wrapped De La Cruz in the active taser wires. With limited options, De La Cruz attempted to use his taser in "drive-stun mode," hoping that the shock would incapacitate her enough to handcuff her. But in their struggle, Turner took hold of the taser and tased him in the testicles.

In shock, De La Cruz jolted back, unholstered his gun, and fired at Turner. At that time, Turner faced De La Cruz with the taser in hand and was attempting to get up while De La Cruz was wrapped in the live taser wires. Turner died at the scene.

Plaintiffs sued De La Cruz under § 1983 for excessive force in violation of the Fourth Amendment. They also sued the City of Baytown under the ADA and Section 504 and for several claims under state law. De La Cruz moved for summary judgment based on qualified immunity ("QI"). The city also moved for summary judgment. The district court granted summary judgment for De La Cruz and the city on all federal claims and dismissed the

---

[1] The remaining facts are captured on De La Cruz's body cam footage and a Facebook video from an unnamed bystander.

[2] According to the X26P instruction manual, once the taser is used in probe-deployment mode, it can no longer be fired from a distance. Instead, the taser from then on can be used only in "drive-stun mode," meaning that, to be used, the taser must be pressed against the person. The stray wires may still emit temporary electric shocks.

3

No. 24-20015

remaining state-law claims against the city for want of jurisdiction. Plaintiffs appeal.[3]

## II.

We review summary judgments de novo. *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact" and he is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'"[4]

When a defendant's motion for summary judgment is based on a good-faith assertion of QI, the burden of proof shifts "to the plaintiff to show that the defense is not available."[5]

"We review summary judgment evidence in the light most favorable to the nonmoving party. But when video footage captures the incident at issue, we rely on the facts depicted in the footage." *McVae v. Perez*, 120 F.4th 487, 491 (5th Cir. 2024) (citation omitted).[6]

---

[3] Plaintiffs do not appeal the dismissal of their state law claims.

[4] *Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020) (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)).

[6] Plaintiffs dispute the weight that the district court gave the video evidence. Plaintiffs aver that we do not have clear video evidence to corroborate De La Cruz's testimony, and thus the district court improperly relied on it. But the plaintiffs are wrong. The video plainly corroborates De La Cruz's testimony and depicts Turner's arms extending toward De La Cruz's groin area at the time that he alleges he was tased in the testicles. The video also refutes plaintiffs' alternative explanation. Accordingly, the district court properly relied on De La Cruz's corroborated testimony.

No. 24-20015

### III.

The district court granted summary judgment for De La Cruz, finding that De La Cruz's use of deadly force was reasonable and that it did not violate clearly established law. We agree that De La Cruz did not violate any clearly established law and is thus entitled to QI.

QI is an affirmative defense that exists to protect officers from liability for civil damages where the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Aguirre*, 995 F.3d at 406 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A two-prong inquiry determines whether qualified immunity applies. The first prong asks whether the facts show that the official's conduct violated a statutory or constitutional right. The second prong asks whether that right was "clearly established" at the time of the violation." *McVae*, 120 F.4th at 492 (cleaned up). We may "decid[e] which of the two prongs of the qualified immunity analysis should be addressed [] in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Because plaintiffs failed to identify any clearly established law that De La Cruz violated, we do not address whether his use of force was reasonable.

The clearly-established-law requirement ensures that officers have "fair warning that their conduct violated the Constitution." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "For a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 285 (5th Cir. 2019) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). We are instructed not to define clearly established rights "at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *al-Kidd*, 563 U.S.

5

No. 24-20015

at 742). "Such specificity is especially important in the Fourth Amendment context[.]" *Id.*

Plaintiffs posit that De La Cruz is not entitled to QI because it is clearly established that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Plaintiffs' reliance on *Garner*—and only *Garner*—is misguided.[7]   "At most, *Garner* prohibits using deadly force against an unarmed burglary suspect fleeing on foot who poses no immediate threat." *Harmon v. City of Arlington*, 16 F.4th 1159, 1167 (5th Cir. 2021).   That is a far cry from the particular circumstances of this case.

Here, unlike in *Garner*, the officer used deadly force only after he had been tased, and the taser wires were attached to him, and Turner, who had been actively resisting arrest, was attempting to rise from the ground with the officer's taser in hand.  In other words, Turner was not an "unarmed [] suspect fleeing on foot and who pose[d] no immediate threat" to De La Cruz. Accordingly, even if De La Cruz's use of force is excessive, he is still entitled to QI.

## IV.

The district court granted summary judgment for the city on the ADA and Section 504 claims, finding that because "De La Cruz was executing a routine, on-the-street response to an incident when he attempted to arrest Turner pursuant to warrants" and because the scene had not yet been

---

[7] Plaintiffs also aver that this is an "obvious" case under *Garner*, obviating the need to identify any other caselaw. Though rare, "obvious" excessive force cases do exist. *See Cole v. Carson*, 935 F.3d 444, 453–54 (5th Cir. 2019) (en banc). This, however, is not one of them.

6

No. 24-20015

secured, the ADA and Section 504 do not apply. We agree. [8]

Neither statute applies to "an officer's on-the-street response to . . . incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is not a threat to human life." *Allen v. Hays*, 65 F.4th 736, 752 (5th Cir. 2023) (quoting *Hainze*, 207 F.3d at 801). Because effecting an arrest pursuant to a warrant is merely "executing a routine, on-the-street response to an incident," and because De La Cruz was not able to secure the scene, neither the ADA nor Section 504 applies.

*Allen* is illustrative of that conclusion: Two officers pulled over a "veteran known to the Houston Police Department ("HPD") for his documented history of PTSD" as part of a "routine traffic stop." 65 F.4th at 741. The stop quickly became non-routine, however, when a miscommunication between Allen and the officers led to the officers' suspecting Allen was dangerous and fatally shooting him. *Id.* at 742. We held that the ADA and Section 504 did not apply because "[t]o require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents." *Hainze*, 207 F.3d at 801. And "[w]hile the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public." *Id.*

Accordingly, whether the ADA or Section 504 applies when a routine arrest turns hostile because of exigent circumstances depends on whether the

---

[8] We analyze claims under the ADA and Section 504 together. *See Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citations omitted).

No. 24-20015

scene is secure. To hold otherwise, as plaintiffs would have, disregards common sense and our precedents. *See id.* (holding that officers must favor the public safety over statutory compliance); *Allen*, 65 F.4th at 752 (same).

Because De La Cruz faced hostile resistance from Turner when he attempted to arrest her, the scene was entirely unsecure. And because of her ongoing resistance, he never had a chance to secure it. Accordingly, the ADA and Section 504 do not apply. The district court properly dismissed plaintiffs' ADA and Section 504 claims.

Even if they did apply, dismissal would be proper. To establish a *prima facie* case under either statute a plaintiff must show

> (1) that he is a qualified individual. . . ; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.[9]

The plaintiff must also demonstrate intentional discrimination to recover damages. *Id.*

In this context, mere knowledge of a disability is not enough; the officer must have understood the "limitations [the plaintiff] experienced . . . as a result of that disability." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). "The burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms." *Windham v. Harris Cnty.*, 875 F.3d 229, 237 (5th Cir. 2017) (cleaned up). "When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that 'the disability, resulting lim-

---

[9] *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)).

No. 24-20015

itation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents."[10]

De La Cruz knew only that Turner had "mental health issues" that caused her to be "aggressive." Turner never articulated a disability, expressed any resulting limitation, or requested an accommodation to De La Cruz. And now, plaintiffs do not even attempt specifically to identify what Turner's disability is or explain how it is a qualifying disability under the ADA and Section 504. Plaintiffs also fail to explain, given the various deficiencies in their claims, how Turner's disability, associated limitation, or accommodation is "open, obvious, and apparent." In other words, plaintiffs have not established any element of their claims, let alone raised a material factual dispute as to any of them.[11]

The summary judgment is AFFIRMED.

---

[10] *Sligh v. City of Conroe*, 87 F.4th 290, 304 (5th Cir. 2023) (quoting *Windham*, 875 F.3d at 237).

[11] It does not matter that plaintiffs *may* have presented some question as to whether there was "intentional discrimination," namely whether De La Cruz worked with the apartment complex constructively to evict Turner. Even accepting that as true, plaintiffs have failed to demonstrate any support for the remaining elements.